USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/4/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

ALPHA MEDIA GROUP, INC.,

        Plaintiff,

   -against-

CORAD HEALTHCARE, INC., *et ano.*

        Defendants.
------------------------------X

13 Civ. 5438 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

      Plaintiff Alpha Media Group, Inc. ("AMG") seeks a preliminary injunction enjoining Defendants Corad Healthcare, Inc. and Keith A. Roberts (collectively, "Corad") from continuing to market its products using packaging AMG alleges violates its trademark rights. For the following reasons, AMG's motion is denied.

## BACKGROUND

      AMG is the publisher of Maxim magazine, a publication with a circulation of over two million. It describes Maxim magazine as a "lifestyle" brand focused on "relationships, sex, sports, cars, fashion, popular culture, health, grooming and appearance, and nightlife." (Pl.'s Br. at 2-3.) AMG has had a registered trademark in "Maxim" since 1997 and owns seven U.S. registrations in total. AMG has licensed its Maxim mark to a number of "lifestyle goods" such as playing cards, restaurants and bars, nightclubs, beauty contests, beer mugs, and bottle openers, as well as events such as an annual Super Bowl party, the "Hot 100 Party," and events featuring Maxim's "Hometown Hotties." The most commonly used iteration of AMG's Maxim mark is "MAXIM" in red, capital letters.

-1-

Corad manufactures antiperspirants to treat hyperhidrosis, a condition causing excessive sweating. It has sold its antiperspirants under the "Maxim" trademark since 2001. In 2003, it obtained a registered trademark in the name "Maxim" for unscented antiperspirants. In the past, Corad has used packaging with a "clinical" look, featuring a medical caduceus and noting the product is "doctor recommended" and "prescription strength." Since 2003, it has sold two antiperspirant products for sensitive skin, an unscented roll-on and unscented antiperspirant wipes, in blue boxes with "MAXIM" in white, capital letters and a photo of a man and a woman, along with a caduceus and notes that it is "prescription strength" and "doctor recommended." Since 2006, Corad has sold its unscented wipes for regular skin in a black box with "MAXIM" in red, capital letters. While that package still contains the caduceus, "prescription strength," and "doctor recommended" markings, it also includes four pictograms denoting travel, golf, exercise, and gym. Corad has expanded into scented antiperspirant wipes, which it sells in a package with an ® marking, despite the fact scented wipes are outside Corad's registered trademark for unscented antiperspirants. Corad has agreed to remove that marking from its scented antiperspirants.

AMG intends to license its Maxim trademark to a line of body sprays, perfumes, and colognes. Though it had long been aware of Corad's use of the Maxim trademark, AMG only learned of Corad's current packaging, which has been in use for years, when it canvassed the marketplace in preparation to launch its own line of scented products. It also only recently became aware that Corad was marketing a scented "Maxim" antiperspirant product. AMG claims Corad's "new" packaging no longer reflects a medical product, but instead is impermissibly evocative of Maxim magazine's lifestyle brand by using red letters on a black

background, a photo of a couple, and the pictograms. It also alleges that the use of the ® symbol on the scented product constitutes false advertising. Approximately ten weeks after learning of Corad's packaging and its scented product, it filed this action, alleging trademark and false advertising claims under federal and state law.

## DISCUSSION

"A party seeking a preliminary injunction must demonstrate: (1) 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,' and (2) 'irreparable harm in the absence of the injunction.'" Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009) (quoting Cnty. of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008)).

I.   Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" Faiveley, 559 F.3d at118 (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999)). "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Faiveley, 559 F.3d at 118.

It used to be the law that "a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product," because "a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm." Church of Scientology Int'l v. Elmira Mission of the

Church of Scientology, 794 F.2d 38, 41 (2d Cir. 1986). However, in Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010), the Second Circuit held that "a court deciding whether to issue an injunction must not adopt 'categorical' or 'general' rules or presume that a party has met an element of the injunction standard." Salinger, 607 F.3d at 78 n.7 (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-94 (2006)).

AMG asserts that it would be irreparably harmed because Corad's products will spawn consumer confusion and cause AMG to lose control of its reputation. But, that bare bones and conclusory assertion is insufficient in light of Salinger. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011). It is still the case that "a party's demonstration of a likelihood of success on an infringement claim often foretells a finding of irreparable harm," Juicy Couture, Inc. v. Bella Int'l Ltd., 930 F. Supp. 2d 489, 503 (S.D.N.Y. 2013), but AMG has put forth no reason to believe irreparable harm will in fact occur.

And there is good reason to believe AMG would not be harmed without an injunction. The presumption of irreparable harm in trademark cases was based on the "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled." Lobo Enters., Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir. 1987) (emphasis added). Corad does very little marketing and directs its products at a small consumer segment. There can be no irreparable harm when very few consumers are likely to encounter Corad's products, even assuming they do create a likelihood of confusion as to their origin. Indeed, AMG itself, which has a strong interest in surveying the use of the Maxim trademark, did not learn of the allegedly offending packaging for years after it was first used. As AMG itself points out, there is no evidence that Corad "conducted any advertising that AMG would have reason to see" and there

is no indication that Corad "has sufficient sales or distribution such that AMG might reasonably know of its infringing use." (Pl.'s Reply Br. at 6 n. 2.) While these arguments may help negate a laches defense, they also diminish any possible inference of irreparable harm.

The only consumers likely to encounter Corad's product are hyperhidrosis sufferers. As AMG argued to the Patent and Trademark Office while applying for a registered trademark for scented products, Corad's product "is not a perfume but a product which is sold to a small group of people who have an excess sweating condition." Decl. of Thomas A. O'Rourke, dated Sept. 11, 2013 ("O'Rourke Decl.," ECF No. 17), Ex. F at 8.[1] Moreover, AMG observed that "Corad's products are sold almost exclusively through websites that it owns or operates." O'Rourke Decl. Ex. F at 7. AMG argues there is irreparable harm because it now wants to license a fragranced cosmetic product. But AMG's own plans will not increase the visibility of Corad's non-prescription medical products, marketed to a niche group of consumers.

The fact that Corad has used the packaging AMG complains of for years also negates any presumption of an irreparable harm in another way: any harm caused by Corad's packaging has likely already been inflicted. The elements AMG complains of have been in use since 2003, in the case of the product for sensitive skin, and since 2006, in the case of the regular product. Thus far they have not caused AMG to lose control of its reputation, and there is no reason to believe they have caused customer confusion. It is difficult to see how AMG would now suffer irreparable harm if they remain on the market for the comparatively short time it will

---

[1] "[I]n general, courts do not bind parties to their statements made or positions taken in ex parte application proceedings in front of the PTO." Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 534 (S.D.N.Y. 2012). However, "they are considered as evidence, albeit not conclusive evidence, of the truth of the assertions." 6 McCarthy on Trademarks and Unfair Competition, § 32:111 (4th ed.) (internal quotation omitted). AMG's statements to the PTO concerned only Corad's unscented antiperspirant, but its scented antiperspirant is not so different as to affect the conclusion that both products are available through limited channels and marketed to a small group of consumers.

take to resolve this matter.

## CONCLUSION

For the foregoing reasons, AMG has not shown that it is otherwise suffering irreparable harm. Accordingly, its motion for a preliminary injunction is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 12.

Dated: October 31, 2013
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Arthur J. Jacobs, Esq.
Barbara J. Lipshutz, Esq.
John F. Burleigh, Esq.
Zeynel M. Karcioglu, Esq.
Jacobs & Burleigh LLP
445 Park Avenue
New York, NY 10022
*Counsel for Plaintiff*

Thomas A. O'Rourke, Esq.
Bodner & O'Rourke LLP
425 Broadhollow Road, Suite 120
Melville, NY 11747
*Counsel for Defendants*